# IN THE COURT OF APPEALS OF IOWA

No. 23-0711
Filed May 22, 2024

**JANET WALKER and LINDA MARTENS,**
　　　Plaintiffs-Appellees,

**vs.**

**MARLIN DANIELS, GLENN DANIELS, and DAVID DANIELS, each in their capacity as Co-Executors of the Estate of Lucille Daniels, Deceased, and individually, ESTATE OF LUCILLE DANIELS, and DANIELS, INC.**
　　　Defendants-Appellants.
_____

　　　Appeal from the Iowa District Court for Lyon County, Charles Borth, Judge.


　　　A family farm corporation and its majority shareholders appeal the district court's determination of the fair value of petitioning shareholders' shares after the corporation elected to buy the shares in lieu of corporate dissolution under Iowa Code section 490.1434 (2021). **AFFIRMED**.


　　　Zachary P. Armstrong (pro hac vice) of DeWitt LLP, Minneapolis, Minnesota, and Julie L. Vyskocil of Brick Gentry, P.C., West Des Moines, for all appellants.

　　　Mike Austin (until withdrawal) and Paul Kippley of Austin, Haberkorn, Kippley & Wippert, PLC, Rock Rapids, for appellants Marlin Daniels, Glenn Daniels, and David Daniels, in their capacity as co-executors of the Estate of Lucille Daniels.

Jeff W. Wright, Allyson C. Dirksen, and Zack A. Martin of Heidman Law Firm, P.L.L.C., Sioux City, for appellees.

Heard by Tabor, P.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

This is a dispute between two groups of siblings—three brothers and two sisters—over their family farming operation. While their conflict has spawned much litigation, only a narrow question is before us: did the district court properly value the sisters' shares of the family farm corporation that runs their farming operation and owns about 1100 acres of northwest Iowa farmland? This valuation determines how much the corporation (and thus, practically, the brothers) must pay to buy out their sisters' shares in the corporation after it (again, really the brothers) elected to do so in the face of court-ordered dissolution under Iowa Code section 490.1434 (2021).

The siblings dispute the correct date of valuation and whether the valuation should include discounts for taxes or transaction costs that would be incurred in a hypothetical liquidation. Because of increasing land values, using the brothers' proposed earlier date and applying the discounts would have valued each sister's shares at a total of $1.5 million. But the court agreed with the sisters and ordered the corporation to pay them each nearly $2.9 million for their shares.

We likewise agree that the sisters have the better argument on each point of dispute. The plain text of section 490.1434(4) presumptively sets the valuation date as the day before the sisters filed their amended petition first asserting a dissolution claim—not the day before their original petition seeking damages for common law minority-shareholder oppression. And since a sale of the farming corporation's assets was not imminent—or expected ever—it is proper not to discount the fair value for hypothetical tax consequences or transaction costs. We thus affirm the district court's fair-value determination of the sisters' shares.

### I.  Factual Background and Proceedings

Daniels, Inc. is a family farm corporation that runs a farming operation in northwest Iowa.  It owns about 1100 acres of farmland around George, Iowa.  And it farms additional rented land, sells seed, transports harvested crops, and installs drainage tile.  Five siblings and the estate of their mother, Lucille Daniels, own all the corporation's shares.  The three brothers—David, Glenn, and Marlin Daniels— and the estate own a majority (70.4%) of the shares.  The brothers are also actively engaged in the corporation's operations.  The remaining shares are owned by the two sisters—Janet Walker and Linda Martens—who each own 14.8% of the corporation's shares.  The sisters are not involved in the farming operations.

In 2019, the relationship between the brothers and the sisters soured. Because it is not relevant to any issue on appeal, we do not dwell on the specifics. But the conflict over Daniels, Inc. escalated.  And finally, the sisters went to court.

On December 16, 2020, the sisters sued Daniels, Inc. and its majority shareholders—all three brothers and their mother's estate.[1]  They brought a single claim: minority-shareholder oppression under the common law.[2]  They alleged that the brothers engaged in oppressive conduct—including keeping corporate records from them, self-dealing, taking corporate money, and failing to make any distributions—to prevent them from participating in the corporation or getting any

---

[1] Marlin, Glenn, and David Daniels were sued individually and in their roles as co-executors of the estate.  Since the interests of the brothers, the estate, and Daniels, Inc. are aligned, we will refer to them all collectively as the brothers.

[2] The same day, the sisters also petitioned in the probate proceeding to set aside their mother's will because of undue influence by the brothers and lack of testamentary capacity and to claim tortious interference with their bequests.  The oppression lawsuit was consolidated into the probate proceeding.  But the probate claims were eventually dismissed and are not otherwise relevant to this appeal.

meaningful return from their shares. And they sought compensatory and punitive damages, attorney fees, and the standard catchall—"such other and further relief that the Court may deem just and equitable." The litigation went on.

Then, the sisters filed an amended petition on August 24, 2021. In it, they added a claim for dissolution of Daniels, Inc. under Iowa Code section 490.1430 for the first time. They alleged that dissolution was warranted under that statute because the brothers "as directors and officers in control of the Company, have acted and continue to act in a manner that is illegal, oppressive and/or fraudulent in connection with the Company and/or the corporate assets are being misapplied or wasted." The corporation did not elect to buy the sisters' shares within ninety days, as it was entitled to do under section 490.1434. So the back and forth in court—with more claims and counterclaims not relevant here—again continued on.

Eventually, the sisters' oppression and dissolution claims were both tried to the court in January 2023. On the third and final day of trial, the brothers decided they wanted the corporation to exercise its right to buy out the sisters' shares for fair value under section 490.1434 in lieu of dissolution. The sisters agreed that the court could permit the late election, and the court did so. *See* Iowa Code § 490.1434(2) (authorizing election "at such later time as the court in its discretion may allow"). Because the siblings did not reach agreement on the fair value of the shares, this issue remained for the court to decide.

In reaching its valuation decision, the district court first agreed with the sisters that the presumptive valuation date under Iowa Code section 490.1434(4) is August 23, 2021—the day before they filed their amended petition first asserting a dissolution claim. And it rejected both the brothers' and the sisters' arguments

for exercising its discretion to select an earlier or later date, reasoning "that equity does not call for the court to depart from the statutory presumptive date."

The court then found that the sisters' expert witness "provided the only credible evidence as to the value of Daniels, Inc., as of August 23, 2021." The court noted that both the sisters' and brothers' experts agreed that the net-asset method of valuation was appropriate. And the court recognized that the experts disagreed about whether to discount the value of the corporate assets for tax consequences or transaction costs from a hypothetical liquidation. But the court found the opinion of the sisters' expert that the discounts should not be included "more credible" than that of the brothers' expert, particularly because the brothers presented no evidence of any contemplated sale of assets and one brother testified they intended to keep farming all their land for "generations to come."

Like the sisters' expert, the court acknowledged that Daniels, Inc. is a C corporation rather than an S corporation and thus could have to pay corporate taxes if its assets are ever sold. But the court reasoned this is "not the determining factor." It pointed to the expert's opinion that "with operations continuing into the foreseeable future and no liquidation events imminent, management has ample time to take strategic action to minimize or evade altogether any hypothetical tax consequences," including "conversion to an S-Corporation five years prior to a sale or a 1031 Election to defer taxes."

Consistent with the sisters' expert's opinion, the district court found the fair value of each sister's shares to be $2,860,128.90. So the court ordered Daniels, Inc. to buy each sister's shares for that amount. And as required by the election-in-lieu-of-dissolution statute, it dismissed the sisters' dissolution claims. *See* Iowa

Code § 490.1434(6). The brothers now appeal the district court's fair-value determination.

## II. Date of Valuation

When a corporation decides to avoid its dissolution by buying the shares of shareholders petitioning for dissolution under Iowa Code section 490.1430(1)(b), the corporation must do so "at the fair value of the shares." *Id.* § 490.1434(1). And "[i]f the parties are unable to reach an agreement" on the fair value, a party may ask the court to "determine the fair value of the petitioner's shares as of the day before the date on which the petition under section 490.1430, subsection 1, paragraph 'b', was filed or as of such other date as the court deems appropriate under the circumstances." *Id.* § 490.1431(4). Because this is an equitable proceeding, we review the district court's fair-value determination de novo. *Guge v. Kassel Enters., Inc.*, 962 N.W.2d 764, 770 (Iowa 2021).[3]

The brothers argue that the district court erred in holding that August 23, 2021—the day before the sisters filed their amended petition first asserting a dissolution claim—is "the day before the date on which the petition under section 490.1430, subsection 1, paragraph 'b', was filed." Iowa Code § 490.1434(4). According to the brothers, the proper date is December 15, 2020,

---

[3] The sisters contend our review of the court's selection of a valuation date is for abuse of discretion since the court may deem a date other than the statutorily presumptive date to be "appropriate under the circumstances." Iowa Code § 490.1434(4). We need not decide whether that would be the proper standard of review for a challenge to the court's decision whether to use the presumptive date or to select a different date because neither party makes such a challenge here. The court decided "that equity does not call for the court to depart from the statutory presumptive date." And the brothers challenge only the court's interpretation of the statute to decide that date. We do not give the district court any deference on such a legal question.

the day before the sisters filed their *original* petition asserting a common law minority-shareholder oppression claim. They reason mainly that because the original common-law claim arose out of the same conduct as the dissolution claim, we should apply the relation-back doctrine of Iowa Rule of Civil Procedure 1.402(5) to treat the dissolution claim as being filed on the earlier date. We disagree.

The district court correctly interpreted and applied the statute. The sisters filed a "petition under section 490.1430, subsection 1, paragraph 'b'" for the first and only time on August 24, 2021, when they filed their amended petition. Iowa Code § 490.1434(4). That petition added a claim for judicial dissolution of Daniels, Inc. under section 490.1430(1)(b), which authorizes "[a] proceeding by a shareholder" to "dissolve a corporation" when certain conduct "is established." *Id.* § 490.1430(1). And so, under the plain text of section 490.1434(4), the presumptive valuation date is the day before the amended petition's filing: August 23, 2021.

The sisters' original petition was *not* a "petition under section 490.1430, subsection 1, paragraph 'b'." Iowa Code § 490.1434(4). In it, they neither sought judicial dissolution nor mentioned section 490.1430. Rather, they asserted only a common-law claim of minority-shareholder oppression and sought compensatory and punitive damages and attorney fees. We see no basis to conclude that the original petition was brought "under" a statute on which it does not rely. Iowa Code § 490.1434(4).

Still, the brothers suggest that the sisters "constructively pled dissolution" in the original petition because the sisters included the common catch-all request "for such other and further relief that the Court may deem just and equitable" and the

same oppressive conduct alleged could support a dissolution claim under section 490.1430.  But interpreting section 490.1434(4) that way would mean that a corporation or its shareholders could elect to cut off an oppression suit by shareholders who are merely seeking damages and unilaterally force them to give up their shares for fair value, when the statute says that election can only be exercised "[i]n a proceeding under section 490.1430, subsection 1, paragraph 'b', to dissolve a corporation."  *Id.* § 490.1434(1).  We do not see any textual support that the statute sweeps so broadly.

The brothers also argue that even if the original petition was not a petition under section 490.1430(1)(b), we should treat the amended petition as being filed on the date of the original petition based on the relation-back doctrine in Iowa Rule of Civil Procedure 1.402(5).  This rule provides that "[w]henever the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading, the amendment relates back to the date of the original pleading."  Iowa R. Civ. P. 1.402(5).  It "is generally applied only with reference to the statute of limitations."  *Erickson v. Wright Welding Supply, Inc.*, 485 N.W.2d 82, 85 (Iowa 1992) (cleaned up); *see, e.g.*, *In re Est. of Glaser*, 959 N.W.2d 379, 383–85 (Iowa 2021).

While the relation-back doctrine "may also find application in other contexts," we are aware of only one time our supreme court has done so.  *Erickson*, 485 N.W.282 at 85.  There, it was used to interpret an effective-date provision of a new statute that applied to "all cases filed on or after" a specified date.  *Id.* at 83.  And the court held that an amended petition adding a new party filed after that date did not relate back, so it was a case filed after the effective date to which the statute

applied.  *See id.* at 85.  This procedural context—considering the viability of a later pleaded cause of action based on a statutory timeline—was thus similar to the doctrine's normal statute-of-limitations context and the doctrine made sense as a framework for construing the statutory term "case."[4]

But section 490.1434(4) is different from statutes of limitations or effective-date provisions.  It is a substantive provision governing the scope of a shareholders' fair-value right and on what date that should be determined.  It uses unambiguous and specific language—"the day before the date on which the petition under section 490.1430, subsection 1, paragraph 'b', was filed."  Iowa Code § 490.1434(4).  And engrafting the relation-back doctrine onto this statute, to say that a petition is deemed filed on an earlier date when a petition was filed that was *not* "under section 490.1430, subsection 1, paragraph 'b'," would be rewriting the statute and changing the substantive valuation rights it grants.  We interpret neither section 490.1434(4) nor rule 1.402(5) to require that result.

We also agree with the district court that a contrary interpretation would conflict with the rest of the election-in-lieu-of-dissolution statutory scheme.  A corporation must give notice to its shareholders within ten days of the filing of a dissolution petition under section 490.1434(1).  *See id.* § 490.1431(4).  And it must make its election to buy the petitioner's shares within ninety days of the filing unless the court grants an extension.  *Id.* § 490.1434(2).  Both requirements would be

---

[4] We are also mindful that when the relation-back doctrine has previously been pushed to the edge of its normal statute-of-limitation context, the legislature responded by rejecting that expansion.  *See Allison v. State*, 914 N.W.2d 866, 891 (Iowa 2018), *abrogated by* 2019 Iowa Acts ch. 140, § 34 (codified at Iowa Code § 822.3), *as recognized by Sandoval v. State*, 975 N.W.2d 434, 436 (Iowa 2022).

impossible to meet in cases like this one—where an amended petition adding a dissolution claim is filed more than ninety days after the original petition—if we interpreted the statute and rule to relate back the amended petition to the original petition's filing date.  Both deadlines would have run before the corporation even had a chance to comply.  While the brothers are correct that the court could extend the election deadline, the conflict that arises from the default deadlines under this interpretation still counsels against following it.

In sum, the district court did not err in holding that August 23, 2021—the day before the sisters filed their amended petition first asserting a dissolution claim under section 490.1430(1)(b)—was the presumptive valuation date under section 490.1434(4).

### III.    Discount for Corporate Taxes and Transaction Costs

The brothers next challenge the district court's decision not to discount the August 23, 2021 valuation of Daniels, Inc. to account for the potential taxes and transaction costs that the corporation could pay in a hypothetical liquidation.  On our de novo review, the district court's fact findings do not bind us.  *See Guge*, 962 N.W.2d at 770.  But "we generally give them weight, particularly as to witness credibility determinations."  *Id.*  This is "because the district court has a front-row seat to the live testimony, viewing the demeanor of both the witness as she testifies and the parties while they listen, whereas our review is limited to reading black words on a white page of sterile transcript."  *Hora v. Hora*, __ N.W.3d __,  2024 WL 1685065, at *7 (Iowa 2024).  And so, "where the testimony is conflicting, great weight is accorded the findings of the trial court."  *Id.* (cleaned up).

Recall, section 490.1434(4) requires the court to "determine the fair value" of the sisters' shares in Daniels, Inc. Iowa Code § 490.1434(4). This provision does not define "fair value." *See Guge*, 962 N.W.2d at 770. But the supreme court has interpreted the term consistent with other provisions in the same chapter defining it as "the value of the corporation's shares" calculated "[u]sing customary and current valuation concepts and techniques generally employed for similar businesses in the context of the transaction requiring appraisal" while not "discounting for lack of marketability or minority status." Iowa Code § 490.1301(3); *see Guge*, 962 N.W.2d at 770. Since "shares of most closely held businesses have no established market," determining the fair value of the shares is challenging. *Guge*, 962 N.W.2d at 770.

The brothers and the sisters both presented expert witnesses to offer their opinions on the fair value of the sisters' shares. The two experts agreed that the net-asset method of valuation was most appropriate given the nature of the farming operation. *See id.* at 771 (discussing benefits of net-asset method for determining fair value where "an overwhelming proportion of the entity's value rested in its farmland holdings as opposed to income generated in ongoing operations"). Essentially, this method calculates the value of all the corporate assets, subtracts all its liabilities, and then divides this value pro rata to calculate the value of each share. *See id.* But the siblings' experts disagreed about whether the deductions should include the potential corporate taxes or transaction costs (such as sales commissions) that the corporation could incur in a hypothetical liquidation of all its assets.

The district court found the sisters' expert—who opined that the hypothetical taxes and costs should not be deducted because no sale of assets is contemplated—"more credible" than the brothers' expert. The court relied on the expert's opinion that "with operations continuing into the foreseeable future and no liquidation events imminent, management has ample time to take strategic action to minimize or evade altogether any hypothetical tax consequences," including "conversion to an S-Corporation five years prior to a sale or a 1031 Election to defer taxes." And the court found that no actual sale of assets was contemplated. We see no reason to disagree with any of these findings. Indeed, one of the brothers testified at trial that Daniels, Inc. has no pending purchase agreements and plans to continue farming and keep the ownership "in the family for the next generations to come." And even the brothers' expert agreed that the tax consequences would apply only if a sale actually occurred.

The brothers argue that failing to discount for any tax consequences was error based mainly on the supreme court's decision in *Guge v. Kassel Enterprises, Inc.*, 962 N.W.2d 764 (Iowa 2021). They contend that the supreme court's approval of *not* discounting for tax consequences in that case supports their cause here because the court recognized that applying a tax discount to an S corporation would "impose a double tax of sorts" on the selling shareholders. *Id.* at 772. And so they reason that because Daniels, Inc. is a C corporation under 26 U.S.C. § 1361(a)(2)—subjecting it to a potential tax liability at the corporate level—the double-taxation logic would not apply here and the tax discount should be made.

But this double-taxation logic was only part of the supreme court's reasoning. The court went on to hold that "[w]hen valuing a corporation's assets

in a fair-value determination, tax consequences should be considered only in the most limited circumstances, which in most cases means only when a sale of those assets is imminent and unrelated to the transaction that triggered the petitioning shareholders' action." *Id.* at 773 (cleaned up). It explained, "[i]n the absence of specific facts about a prospective sale, it would be the basest form of speculation to attempt to determine tax consequences of a voluntary liquidation of assets at an unknown future time." *Id.* (cleaned up). And so, because the court found that the record "lacks evidence of any actual or contemplated liquidation of assets . . . that would create any tax consequences impacting the corporation's value as a going concern," it declined to adjust the valuation for any tax consequences. *Id.*

We cannot disregard this core holding. And just as in *Guge*, our record "lacks evidence of any actual or contemplated liquidation of assets." *Id.* So we see no basis to conclude that this is one of "the most limited circumstances" in which "tax consequences should be considered." *Id.*

The brothers find ammunition for their contrary position—that a proper valuation of Daniels, Inc. needs to account for the potential tax consequences because it is a C corporation—from the special concurrence of two justices in *Guge*. *See id.* at 777–80 (Oxley, J., concurring). But the brothers fail to hit their mark because the reasoning of the special concurrence, however persuasive it may be, is not the holding of the court that binds us. Nor is it even trying to describe the holding of the court as special concurrences sometimes do. It offers a different rationale—one not accepted by the court. *See id.* ("With respect to the capital gains taxes, the majority reaches the right result but for the wrong reason."). And those two justices thus did not join the majority's opinion on that issue and

concurred "only in the judgment." *Id.* So if there were any doubt that the majority opinion does not rest on the distinction between C and S corporations and instead adopts the different, broader rule discussed above, the special concurrence removes it.

The brothers also seek support from pre-*Guge* precedent. But our unpublished decision in *Baur v. Baur Farms, Inc.*, No. 14-1412, 2016 WL 4036105, at *4 (Iowa Ct. App. July 27, 2016), which approved of discounting for tax consequences to value a C corporation, is not binding on us—*Guge* is. *See In re S.O.*, 967 N.W.2d 198, 206 (Iowa Ct. App. 2021); Iowa R. App. P. 6.904(2)(a)(2). And *Daniels v. Holtz*, which held that an owner received a "just appraisal" despite the appraiser "discount[ing] the stock based on the capital gains tax liability," is distinguishable because it was not applying the "fair value" requirement of section 490.1434(4).[5] *Daniels v. Holtz*, 794 N.W.2d 813, 817–19 (Iowa 2010).

---

[5] What's more, *Daniels* relied on the approval of tax-consequence discounts "by numerous federal courts." *Daniels*, 794 N.W.2d at 819. But federal courts that have embraced deducting capital gains from a C corporation's valuation in various contexts have done so applying the federal *fair market value* standard. *See, e.g.*, *Est. of Jelke v. Comm'r*, 507 F.3d 1317, 1331–33 (11th Cir. 2007) (tracing the history of deducting built-in capital gains and the Tax Reform Act of 1986 and concluding no rational buyer would "pay the same price for identical blocks of stock, one purchased outright in the marketplace with no tax consequences, and one acquired through the purchase of shares in a closely-held corporation, with significant, built-in tax consequences," and thus deducting 100% of built-in capital gains that would be due on a sale of assets is appropriate); *Eisenberg v. Comm'r*, 155 F.3d 50, 57–59 (2d Cir. 1998); *Est. of Dunn v. Comm'r*, 301 F.3d 339, 354 (5th Cir. 2002). Yet "fair market value" is distinct from "fair value," and our statute requires the latter standard. *Guge*, 962 N.W.2d at 770; *see also Matthew G. Norton Co. v. Smyth*, 51 P.3d 159, 163 (Wash. Ct. App. 2002) (noting the "Legislature's use of the term 'fair value' was not a slip of the pen—the Legislature did not intend to say 'fair market value'").

Bottom line, we must follow *Guge*. And doing so, based on this record with no asset sale contemplated now or for "generations to come," we agree that the fair value of the sisters' share does not require a discount for any hypothetical tax consequences.

Turning to the transaction costs, the brothers again rely on *Guge* to argue that the valuation should have been discounted to account for transaction costs, such as sales commissions from a hypothetical liquidation.[6] And true, the supreme court did reverse the district court's failure to deduct transaction costs there. *See Guge*, 962 N.W.2d at 772. But it did so only because both parties' experts testified that deduction of transaction costs was appropriate—the experts just disagreed on the amount—and yet the district court still did not make any deduction. *See id.* at 771–72. We see no bright-line rule in the court's reasoning that transaction costs should always be deducted. And we lack similar agreement by the experts here. Given the conflicting testimony and the deference we give the district court on credibility decisions, we do not disagree that the sisters' expert was more credible and persuasive in opining that the transaction costs should not be deducted to calculate the fair value of the sisters' shares.

And so, because we find Daniels, Inc. was properly valued on the date before the sisters' amended petition was filed and that valuation properly did not discount for the corporation's tax consequences and transaction costs, we affirm the district court's fair-value determination.

**AFFIRMED.**

---

[6] The brothers' expert witness estimated that these costs would be 5% of the corporation's value.